NERSES TOOKMANIAN *vs.* MILDRED A. FANNING.

Essex.     October 8, 1940. — January 28, 1941.

Present: FIELD, C.J., DONAHUE, DOLAN, COX, & RONAN, JJ.

*Negligence,* Motor vehicle, Contributory, In use of way.  *Practice, Civil,* Requests, rulings and instructions.

At the trial upon an auditor's report and other evidence of an action for personal injuries sustained when the plaintiff, as he was crossing a street, was struck by an automobile operated by the defendant, where the auditor reported a conclusion that the plaintiff was in the exercise of due care and none of the subsidiary findings reported by him were necessarily inconsistent therewith, but the plaintiff's testimony varied somewhat from the subsidiary findings, the question of his due care was for the jury.

A finding of negligence of the operator of an automobile was warranted by evidence that he approached an intersection of public ways without a warning signal and in violation of §§ 14 and 17 of G. L. (Ter. Ed.) c. 90, and, seeing a pedestrian start to cross from the right, turned toward the left side of the street and struck him.

Requests for rulings as to the legal effect of portions of the evidence or of subsidiary facts bearing upon a particular issue may properly be refused when such portions are not decisive of the issue.

TORT.   Writ in the District Court of Lawrence dated November 15, 1938.

On removal to the Superior Court, the action was tried before *Buttrick,* J., and a verdict was returned for the plaintiff in the sum of $3,750.

*E. J. Garity,* for the defendant.

*J. B. Bagdoian,* for the plaintiff.

DONAHUE, J.   The plaintiff's declaration alleges that while he was crossing Hampshire Street in the city of

Lawrence he was struck by an automobile operated by the defendant. The case was tried before a jury in the Superior Court on the report of an auditor and on the testimony of the parties and other witnesses. There was a verdict for the plaintiff. Various exceptions taken by the defendant have here been argued.

The following facts are not in dispute. Hampshire Street, running north and south, and Concord Street, running east and west, intersect at a right angle. Both streets are of the same width. In the center of Hampshire Street there is a single street car track. At the time the plaintiff was injured he was crossing Hampshire Street in a westerly direction near its intersection with Concord Street. The defendant was operating her automobile in a northerly direction on Hampshire Street. She had entered Hampshire Street from an intersecting street about one hundred yards south of Concord Street. The weather was clear and the streets were dry.

The auditor found that the plaintiff was in the exercise of due care, that the defendant was negligent and that her negligence was the proximate cause of the plaintiff's injuries. Among other subsidiary facts the auditor found the following. The plaintiff, who was sixty-five years old, stepped off the curbing on the easterly side of Hampshire Street near its intersection with Concord Street and "stood for a moment in the gutter preparatory to crossing the street" in a westerly direction. Each street was about forty feet wide. There was a parked car at the plaintiff's right, near the easterly curb of Hampshire Street. "While the plaintiff was making ready to cross the street, the defendant had driven easterly on Valley Street, which runs parallel to Concord Street, and made a left turn into Hampshire Street, operating her car at a speed of about twenty miles an hour." There was an automobile proceeding along the street in front of the defendant and she "slowed her car somewhat," approaching the intersection. "The plaintiff let the car pass which was preceding the defendant's car and then started to cross at a pace that, for a man of his years, would be a run, and at an angle. . . . As the plain-

tiff went across the street the defendant swung her car to the left . . . and could not bring her car to a stop in time to prevent contact, which took place at the westerly car rail. The plaintiff, apparently, did not see the defendant's car approaching, and did not know what caused him to fall to the ground. He is unable to speak English well and it was somewhat difficult to understand his testimony. . . . The plaintiff stood in the gutter on the easterly side of the street for an appreciable time before he started to cross and the defendant saw him standing in this position, and she should have anticipated that the plaintiff was going to cross but she gave no warning signal signifying her intention to proceed to cross the intersection. The plaintiff had reached the westerly car rail, or was beyond the center of the street when the defendant swinging her car to the left and applying her brakes brought her car to a stop. . . . When the plaintiff was picked up he was under the bumper of the car and his left leg was against the left forward wheel. The bruises on his ankle and the type of break of the bones of the leg indicated there was some force applied, causing the injury, rather than his injury being caused by a mere fall."

1. The auditor found that the defendant was, and that the plaintiff was not, negligent. These general findings of the auditor do not purport to be based solely upon the subsidiary findings made by him. None of the subsidiary findings are necessarily inconsistent with the general findings. The general findings therefore had evidential value when the auditor's report was introduced in evidence at the trial before the jury. *Levovsky* v. *Horvitz,* 307 Mass. 475, 480. *Lakeville* v. *Cambridge,* 305 Mass. 256, 260. *Murphy* v. *Smith,* 307 Mass. 64, 66. *Cook* v. *Farm Service Stores, Inc.* 301 Mass. 564, 567.

2. At the trial before the jury the plaintiff testified that he stopped at the corner of the two streets, looked "all around to see if there was nothing going by," proceeded to cross Hampshire Street and reached the second rail of the car track when he "fell down" and "saw an automobile right next to him," and that he had heard "no signal or

horn blown." On cross-examination he testified that when he looked around before starting to cross he saw no automobiles moving, that he looked again and proceeded to cross, that he could not remember whether it was a minute or five after he looked the last time, and that all he could remember was that "he looked, there was nobody" and he started to cross.

A witness testified that he saw the plaintiff crossing the street, "walking like an ordinary man, a man of his age," that he heard a "squeak" of brakes, saw an automobile "stop dead" and the plaintiff lying in front of the left front wheel of the automobile, west of the car track. He testified that two hours after the accident he saw skid marks on the street fifteen feet long "starting at the east side of the first rail and ending where the plaintiff fell."

The defendant testified that she "slowed down a little bit at the intersection"; that she saw the plaintiff standing in the gutter about two feet from the curb as "her car was about to enter the intersection"; that he "suddenly started" and "ran across the street a little bit diagonally toward her"; that "when she saw the plaintiff start to run she applied her brake and turned her car to the left," and stopped it. She further testified that she did not blow her horn, that she "had her car under perfect control," and that "the plaintiff passed in front of her machine and fell on the left side of her machine on the left car track."

In addition to the finding of the auditor that negligence of the defendant was the cause of the plaintiff's injury, there was other evidence warranting the same conclusion. It is provided by statute that "Upon approaching a pedestrian who is upon the traveled part of any way and not upon a sidewalk, every person operating a motor vehicle shall slow down." G. L. (Ter. Ed.) c. 90, § 14. The jury was not obliged to find as the defendant testified that she "slowed down a little bit" when at the southerly edge of the intersection. Even if the defendant did there thus "slow down," a finding was warranted that adequate care required a further diminution of speed as the automobile proceeded to cross the intersection and to approach the

plaintiff, whom she had seen in the street ahead of her before she reached the intersection. The jury could properly have found that the defendant violated the statute and that the violation had a causal connection with the plaintiff's injury. *Birch* v. *Strout*, 303 Mass. 28, 31. *Griffin* v. *Feeney*, 279 Mass. 602, 604. There was evidence which, taken in its aspects most favorable to the plaintiff, warranted the finding that the defendant was negligent in steering her automobile across the center line of the street and running down the plaintiff at the westerly rail of the street car track.

It could not properly have been ruled as matter of law that the defendant had sustained the burden of proving that the plaintiff was not in the exercise of due care. The auditor found that he was. There was evidence before the jury that the plaintiff walked across Hampshire Street and did not run as the defendant testified. The plaintiff was crossing the street at a place near an intersection, where pedestrians ordinarily cross streets and where drivers of motor vehicles might expect that pedestrians would cross. It was a wide street and he might rely to some extent on the belief that any operator of an automobile proceeding northerly on the easterly half of the street, where there was room to continue, would not suddenly turn the vehicle upon the westerly half of the street and collide with the plaintiff who had crossed the center line of the street. *McGuiggan* v. *Atkinson*, 278 Mass. 264, 266. *Desjarlais* v. *Kelley*, 299 Mass. 182, 184, and cases cited. The plaintiff could also rely to some extent on the assumption that the operator of any motor vehicle when approaching a pedestrian on the traveled part of any way and not upon the sidewalk would perform his statutory duty and slow down. G. L. (Ter. Ed.) c. 90, § 14. *Stinson* v. *Soble*, 301 Mass. 483, 486. "There is no rule of law . . . to the effect that under all circumstances a pedestrian must look before or while crossing a street." *Noyes* v. *Whiting*, 289 Mass. 270, 272, and cases cited. "A pedestrian, whether he sees an automobile or not, has a right to rely to some extent on the expectation that any motor vehicle, approaching him,

will slow down" and observe the requirements of G. L.
(Ter. Ed.) c. 90, § 14.  *Barrett* v. *Checker Taxi Co.* 263
Mass. 252, 254.  *Crowley* v. *Freeman,* 291 Mass. 105, 106.
"The mere fact that a pedestrian looked and saw no ap-
proaching vehicle is not, as matter of law, conclusive
against him on the question of his due care."  *Nicholson*
v. *Babb,* 304 Mass. 216, 218.

3. The defendant excepted to the refusal of the judge to
give her second, third, fifth, sixth and seventh requests for
instructions to the jury.  He did instruct the jury as to
some of the matters included in those requests.  He told
the jury that the plaintiff was obliged to take some active
precautions for his own safety, that no person has a right
to put himself in an obvious place of danger entirely trust-
ing to the discretion or the wisdom of somebody else, and
that there must be that exercise of reasonable care and cau-
tion on everybody's part which the jury would naturally
expect from a reasonably prudent person.

The judge refused to give in terms the defendant's sec-
ond request: "The plaintiff was obliged to take some ac-
tive precautions for his own safety, and if he looked to see
whether any vehicles were approaching but saw none when
in fact the defendant's car was in plain sight, then he must
have looked carelessly and is in no better position than if
he had not looked at all."  The judge instructed the jury
in accordance with the first phrase of this request.  The
language of the remainder of the request was similar to
that in requests considered and held properly denied in
*Noyes* v. *Whiting,* 289 Mass. 270, 272, and in *Quinlan* v.
*Hugh Nawn Contracting Co.* 235 Mass. 190, 194.  There was
here no evidence that the plaintiff looked at a time when
the defendant's automobile was in plain sight, and there
is no rule of law that under all circumstances a pedestrian
must look before or while crossing a street.  The latter part
of the request dealt with abstractions so far as this case is
concerned.  It was rightly denied.

The third and fourth requests in so far as they were not
covered by the instructions given by the judge were rightly
denied.

The sixth request was: "If the plaintiff, standing on the sidewalk or in the gutter, started to cross the street under such circumstances that the accident was bound to occur unless the defendant in some way managed to avoid it, the plaintiff was not in the exercise of due care." If this means that the plaintiff was not entitled to rely entirely on the care of the defendant, it was given in substance in the instructions of the judge. If it means that the plaintiff was not entitled to rely to some extent on the defendant using proper care to avoid injury to the plaintiff, it was not correct. There was no error in the refusal of this request.

The defendant's seventh request for instructions to the jury was: "If the defendant observed the plaintiff standing on the sidewalk or in the gutter and in a position where he could readily observe the approach of the defendant's automobile, and without giving any indication that he was about to immediately move out into and across the street, the defendant was not obliged to anticipate that the plaintiff would start out into the path of an obvious danger, and cannot be found negligent." A trial judge is not required to grant requests for instructions to a jury as to the legal effect of portions of the evidence or of subsidiary facts bearing upon a particular issue, when such evidence or facts are not decisive of the issue. *Barnes* v. *Berkshire Street Railway*, 281 Mass. 47, 50–52. *Sherburne* v. *Meade*, 303 Mass. 356, 362. *Lakeville* v. *Cambridge*, 307 Mass. 433, 437–438. The evidence or facts set out in the defendant's seventh request were not decisive of the issue of the defendant's negligence. The speed at which the defendant's automobile was operated as it came along Hampshire Street, its position when the defendant first saw the plaintiff, the opportunity the defendant had to avoid injury to the plaintiff, once she saw him crossing the street, and other matters pertinent to a consideration of the question of negligence of the defendant are not included in the request. There was no error in the refusal to give the seventh request.

4. The judge read to the jury § 17 of G. L. (Ter. Ed.) c. 90. He instructed the jury that if they found that the defendant violated the portion of the section which reads: "It shall be

prima facie evidence of a rate of speed greater than is reasonable and proper . . . if a motor vehicle is operated . . . in any place where the operator's view of the road traffic is obstructed either upon approaching an intersecting way, or in traversing a crossing or intersection of ways . . . at a rate of speed exceeding fifteen miles per hour . . . ," such violation was evidence of negligence of the defendant if the violation contributed to cause the plaintiff's injury. There was evidence that the defendant operated her automobile around a corner and into Hampshire Street, about one hundred yards south of the intersection, at a rate of speed of about twenty miles an hour. She testified that she "slowed down a little bit at the intersection." With her brakes applied while the automobile was going a distance of fifteen feet, it struck the plaintiff, broke his leg, and came to a stop. We think it cannot be said that a finding was unwarranted that the defendant operated her automobile in approaching and in traversing the intersection at a rate of speed exceeding fifteen miles an hour. There was no error in the instruction of the judge with respect to G. L. (Ter. Ed.) c. 90, § 17.

5. The defendant's exception to the denial of her motion for a new trial must be overruled since no abuse of discretion by the trial judge, or error of law with respect to a question arising for the first time on the motion for a new trial, is shown. *Murnane* v. *MacDonald,* 294 Mass. 372.

*Exceptions overruled.*